UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**BRAD L. HULETT**,

        *Plaintiff,*

   *-vs-*

**CITY OF SYRACUSE, FRANK FOWLER,
in his official capacity, WILLIAM COLEMAN,
individually and in his official capacity,
WILLIAM GALVIN, JR., individually and in his
official capacity, CENTRAL NEW YORK
REGIONAL TRANSPORTATION
AUTHORITY d/b/a CNY CENTRO, INC.,
MICHAEL ROBINSON, individually and in his
official capacity, LESTER WALLACE,
individually and in his official capacity,
EASTERN PARAMEDICS, INC. d/b/a
RURAL/METRO CORPORATION, MATT
MAULE, individually, and KYLE
DREVERMAN, individually,**

        *Defendants*

_____

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR
SUMMARY JUDGMENT
&
OPPOSITION TO CITY
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Civil Action No. 5:14 –CV–00152
(DNH/ATB)

By:    Frederick R. Guy (Bar Roll No. 601162)
       Guy Law Firm, PLLC
       3596 Pleasant Valley Road
       Syracuse, NY 13215
       Telephone: (315) 314-7461
       Facsimile: (315) 254-2126
       rickguy7@gmail.com

       Erin G. Van Vleck (Bar Roll No. 520370)
       Law Office of Erin G. Van Vleck, LLC
       PO Box 83526
       Fairbanks, AK 99708
       Telephone: (907) 251-1760
       Facsimile: (844) 332-3973
       erin@vanvlecklaw.com

       *Attorneys for Plaintiff Brad L. Hulett*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

SUMMARY JUDGMENT STANDARD ................................................................................. 2

ARGUMENT ............................................................................................................................ 3

I.    Defendants Galvin and Coleman used excessive force on Hulett. ...................................... 3

    A.    Elements of the excessive force claim under 42 U.S.C. § 1983 ................................ 4

    B.    Galvin's and Coleman's uses of force were not objectively reasonable. ................... 6

II.    Galvin and Coleman subjected Hulett to false arrest. ...................................................... 10

    A.    Elements of the false arrest and false imprisonment under 42 U.S.C. § 1983 ......... 10

    B.    There was no probable cause to arrest Hulett for disorderly conduct. ...................... 11

    C.    There was no probable cause to arrest Hulett for resisting arrest. ............................ 12

III.    Galvin and coleman subjected Hulett to malicious prosecution. ...................................... 13

    A.    Elements of the malicious prosecution claims under 42 U.S.C. § 1983 ................... 13

    B.    Galvin and Coleman initiated and continued a criminal prosecution. ...................... 15

    C.    There was no probable cause for Galvin and Coleman to believe Hulett could
        be successfully prosecuted. ....................................................................................... 15

    D.    Galvin and Coleman acted with malice toward Hulett. ............................................ 16

    E.    The prosecution against Hulett terminated in his favor. ........................................... 17

    F.    Hulett's suffered a sufficient post-arraignment restraint on his liberty. ................... 17

IV.    Hulett concedes that the official capacity suits are redundant. ......................................... 18

V.    Fowler and City of Syracuse subjected Hulett to Excessive force, false arrest, and
      malicious prosecution. ...................................................................................................... 18

    A.    Elements of the *Monell* Claim against Fowler and City of Syracuse ...................... 18

    B.    Failure to Discipline ................................................................................................. 21

    C.    Failure to Supervise and Train .................................................................................. 22

    D.    Failure to Appropriately Investigate Galvin's and Coleman's Uses of Force .......... 22

    E.    Causal Connection .................................................................................................... 22

VI.    Galvin and Coleman are not entitled to qualified immunity. ............................................ 23

VII.    Because Defendants rendered important evidence unavailable, their motion must be
       denied and spoliation sanctions imposed. ......................................................................... 25

    A.    Legal Standard .......................................................................................................... 25

    B.    Spoliated Evidence ................................................................................................... 27

C.      Sanctions ..................................................................................................... 29

VIII.  Coleman is liable in his official capacity under the ADA. .................................... 30

IX.    Hulett's sufficiently pled his N.Y. Human Rights Law claim. .......................... 32

X.     Hulett can recover under his sixth claim (Negligence by the City), and he sufficiently alleged a special duty exists. ........................................................................... 32

XI.    Hulett concedes that he cannot recover under his seventh cause of action for intentional infliction of emotional distress. ......................................................... 34

XII.   Hulett has established deliberate indifference to a serious medical condition, and Defendants have spoliated dispositive evidence. .............................................. 34

CONCLUSION .......................................................................................................... 35

## PRELIMINARY STATEMENT

"If a picture is worth a thousand words, then a video recording is worth a million."[1] A video from Centro bus 1249 shows a significant portion of Defendants' unlawful conduct against Plaintiff Brad L. Hulett.[2] The video and its transcript are the best evidence of what transpired and shows a strikingly different version of the facts than Defendants present. As discussed in section VII, cameras at the Centro hub and on other buses recorded the events *outside* the bus, yet City and Centro Defendants failed to preserve them and rendered them unavailable. Defendants' spoliation of important evidence puts many of the facts in dispute, including all facts of what occurred after Galvin and Coleman forcefully removed Hulett from the bus. It is improper for Defendants to fail to investigate and preserve critical and relevant evidence, and then benefit from that spoliation by arguing facts are not in dispute because they are no longer contestable.

Based on Hulett's Statement of Undisputed Material Facts, and arguments, Hulett is entitled to judgment as a matter of law for his claims of excessive force, false arrest, malicious prosecution, and *Monell* liability (Hulett's first and second claims) against Defendants William Galvin Jr., William Coleman, Chief Frank Fowler, and the City of Syracuse. The Court must deny City Defendants' Summary Judgment Motion, except where conceded below, and should impose sanctions for Defendants' spoliation of important and relevant evidence. Because City Defendants' Statement of Material Facts contains mostly disputed facts, as demonstrated in Hulett's response, summary judgment in Defendants' favor is not appropriate. Furthermore, if the Court does not grant summary judgment in Hulett's favor, the conflicting expert opinions for some issues create jury issues and preclude summary judgment in Defendants' favor.

The video from the bus depicts unlawful conduct, shocking to the conscience, by Defendants William Coleman and William Galvin Jr. against a man with obvious disabilities.

---

[1] *Carpenter v. City of Bean Station, Tenn*., No. 2:09-CV-140, 2011 WL 5025883, at *7 (E.D. Tenn. Oct. 21, 2011).

[2] This video is attached as exhibit 1 to the declaration of Hulett's attorney, Erin G. Van Vleck. All exhibits cited are attached and authenticated by Attorney Van Vleck's declaration.

Hulett's rights were violated because of the policies and practices of the Syracuse Police Department and Defendant Chief Frank Fowler. The Syracuse Police Department tolerated Sergeant Galvin approving his own incident report for his prior Taser use, without investigating that Taser use or disciplining him. And in this case, Galvin approved Officer Coleman's report of Galvin's tasing of Hulett, despite Defendants' police practices expert, Guy Rossi, testifying that in his experience with the Rochester Police Department, "that wouldn't happen, … because … it's … biased. And you want unbiased opinions." Rossi Dep. 136:14-25 (Ex. 30).

The Syracuse Police Department not only encouraged excessive force, false arrest, and malicious prosecution by Galvin and Coleman through its policies of failing to supervise and discipline, but discovery has also established the Syracuse Police Department's history of tasing and using excessive force against citizens with disabilities and other categories of vulnerable citizens. The record further establishes that the Syracuse Police Department improperly reviews officers' uses of force and delays investigating uses of force and injuries to citizens until it is given notice of an impending lawsuit. And even then investigations do not always occur.

For these reasons, and others, Hulett, by and through his attorneys, Frederick R. Guy, of Guy Law Firm, PLLC, and Erin G. Van Vleck, of Law Office of Erin G. Van Vleck, LLC, opposes City Defendants' Motion for Summary Judgment and cross-moves under Rule 56 of the Federal Rules of Civil Procedure and Local Rules of Civil Practice 7.1(a)(3) and 7.1(c).

## STATEMENT OF FACTS

Hulett respectfully directs the Court to refer to his Statement of Undisputed Material Facts for a complete recitation of the facts discussed below.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the *admissible* evidence shows that there is no genuine issue of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that might affect the case's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact is one that is supported by sufficient evidence to

allow a reasonable jury to find for the nonmoving party on that fact. *Id.* at 248-49.

Once the moving party meets its initial burden of demonstrating an absence of a genuine issue of material fact, the nonmoving party must present admissible evidence showing that there is a factual dispute that a reasonable jury could resolve in its favor at trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 248-50. Although the nonmoving party gets the benefit of reasonable factual inferences, it cannot rest on its pleadings, unsupported conclusions, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co*., 475 U.S. at 586; *Citizens Bank of Clearwater v. Hunt*, 929 F.2d 707, 713 (2d Cir. 1991). Summary judgment must be denied "if there is "any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006). Where a video tape captured events at issue and video blatantly contradicts the defendants' version of the events so that no reasonable jury could believe it, the court should not adopt the defendants' version of the facts for purposes of ruling on a summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ARGUMENT

### I. DEFENDANTS GALVIN AND COLEMAN USED EXCESSIVE FORCE ON HULETT.

The Court should grant summary judgment in Hulett's favor for his excessive force cause of action against Defendants Galvin and Coleman and deny City Defendants' motion for summary judgment for this cause of action (Point II of Defendants' memorandum).

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. A citizen may bring a claim under § 1983 when their Fourth Amendment rights have been violated by individuals acting under the color of state authority. *See* 42 U.S.C.A. § 1983 (2016). The undisputed facts demonstrate that defendants Galvin and Coleman, under color of state law, illegally and unconstitutionally deprived Hulett of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, as enforced by

42 U.S.C. § 1983, by subjecting him to excessive use of force.

### A.     Elements of the excessive force claim under 42 U.S.C. § 1983

The Fourth Amendment protects citizens from law enforcement officers' use of excessive force during an arrest, investigatory stop, or other seizure. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). Courts must examine whether the officers' use of force was objectively unreasonable in light of the totality of the facts and circumstances confronting the officers. *Graham*, 490 U.S. at 396-97. Relevant factors for whether the use of force was unreasonable are the "severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. An "immediate threat" is more than a "possible threat," and to accept the proposition that officers are permitted to use a Taser to shield themselves from any possibility of harm and the suspect must suffer the consequences would "effectively eviscerate the protections of the Fourth Amendment and also ignore the teachings of *Graham*. *Beaver v. City of Federal Way*, 507 F. Supp. 2d 1137, 1146 (W.D. Wash. 2007). A person is justified in reasonably resisting an officer's contact when that officer's contact is unlawful. *Niles v. City of Oneida*, 2009 WL 799971, at *7-8 (N.D.N.Y. Mar. 25, 2009). Force is excessive when it is more than is necessary under the circumstances. *Bancroft v. City of Mt. Vernon*, 672 F. Supp. 2d 391, 405 (S.D.N.Y. 2009). Force is unreasonable when the intrusion on the citizen's Fourth Amendment interests outweigh the government interests. *Scott v. Harris*, 550 U.S. 372, 383 (2007); *id.*

Also relevant to the reasonableness inquiry is that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain and rapidly evolving — about the amount of force that is necessary in a particular situation." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The number of officers present to assist in gaining control over an arrestee is also relevant to the reasonableness inquiry. *See Jones v. Huff*, 789 F. Supp. 526, 536 (N.D.N.Y. 1992).

It is "clearly established that any significant degree of force … should not be used lightly

or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010); *Penree v. City of Utica*, No. 6:13-cv-01323-MAD/ATB, 2016 WL 915252, at *28 (N.D.N.Y. March, 4, 2016); *Towsley v. Frank*, 2010 WL 5394837, *10 (D. Vt. Dec. 28, 2010) ("Accepting for purposes of summary judgment that [the defendant's] version of the facts is true, using significant force in the form of a Taser against a suspect who is neither resisting nor fleeing arrest, and who may be seriously injured, serves no legitimate government interest and therefore satisfies *Graham's* excessive force standard.").

The use of a Taser is a "serious intrusion into the core of the interests protected by the Fourth Amendment." *Towsley*, 2010 WL 5394837, at *10. Courts have described the use of a Taser (including the X26) as a "more than non-serious or trivial use of force but less than deadly force, [which] is a serious intrusion into the core of the interests protected by the Fourth Amendment." *Penree v. City of Utica*, 2016 WL 915252, at *28; *see Odom v. Matteo*, 772 F. Supp. 2d 377, 391 (D. Conn. 2011) ("the use of a Taser is a significant use of force"); *Towsley*, 2010 WL 5394837, at *8 (describing the Taser as delivering "a high voltage electrical charge that overrides the person's central nervous system and causes uncontrollable muscle contractions, thus temporarily incapacitating the person); *Oliver v. Fiorino*, 586 F.3d 898, 903 (11th Cir. 2009) (A Taser is "designed to cause significant, uncontrollable muscle contractions"); *see generally Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015) (classifying the infliction of pepper spray as "a significant degree of force" because of its incapacitating and painful effects").

It was held in *Odom v. Matteo* that "a reasonable jury could well find that [the] repeated deployment [of a Taser] on an individual who is suspected of only minor traffic infractions, poses no immediate threat, is not attempting to escape, and has indicated that she suffers from a brain injury constitutes an excessive and unreasonable use of force." 772 F. Supp. 2d at 391. The Eighth Circuit has held that "it is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th

Cir. 2009) (where the plaintiff was suspected of a minor, nonviolent crime and had disobeyed orders to get off the telephone with a 911 operator). The Ninth Circuit has held that a police officer's use of a Taser was an excessive use of force where the officers gave no warning, the suspects were unarmed, and there were children present, despite considering that the situation was potentially dangerous. *See Mattos v. Agarano*, 661 F.3d 433, 451 (9th Cir. 2011).

Disorderly conduct is a violation, which is not a criminal offense and can be punished by no more than fifteen days of incarceration. N.Y. PENAL LAW §§ 240.20, 10.00(3) and (6).

Because of the "fact-specific nature of the inquiry, granting summary judgment *against* a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

**B.   Galvin's and Coleman's uses of force were not objectively reasonable.**

Defendants Galvin's and Coleman's uses of force were excessive. Their uses of force included tasing Hulett, dragging him from the bus, dragging him by his leg on the sidewalk, and kicking him while he was incapacitated on the sidewalk. Ex. 1; Ex. 2; Sgt. W. Galvin Dep. 135:22-136:2, 138:15-21, 138:2-14 (Ex. 12); Fowler Dep. 176:7-14, 178:10-1 (Ex. 15); Walsh Dep. 27:8-11, 63:9-15 (Ex. 26); Capt. T. Galvin Dep. 91:21-92:23 (Ex. 22). These uses of force were excessive under the *Graham* factors, since none of the *Graham* factors were present, especially for Galvin's tasing of Hulett. For the *Graham* factor of the severity of the crime at issue, force was not justified because Hulett was not alleged to have committed a crime. Rather, Defendants alleged that he committed disorderly conduct, which is only a violation. N.Y. PENAL LAW §§ 240.20, 10.00(3) & (6). And as discussed below in section II, Hulett did not commit disorderly conduct. As discussed in Hulett's cross-motion and response to Centro Defendants' Summary Judgment Motion in section I, Wallace's, Robinson's, and Coleman's orders for Hulett to sit down or exit the bus were unlawful.

Second, Hulett posed no immediate threat whatsoever to the safety of Galvin, Coleman, Robinson, Wallace or any passenger on the bus. He was simply trying to peacefully ride a public

bus to the store to buy a vacuum cleaner. Ex. 1; Ex. 6 at 4; Hulett Dep. 33:12-18, 34:11-17, 37:22-38:6 (Ex. 7). Hulett remained calm during his entire interaction with Wallace, Robinson, Coleman, and Galvin and did not use any threatening language or actions whatsoever. Ex. 1; Sgt. Galvin Dep. 196:2-13 (Ex. 12); Coleman Dep. 104:2-15 (Ex. 11). Despite Hulett's non-threatening demeanor, Galvin displayed his taser within a minute from the time he boarded the bus and tased him one minute and 25 seconds after boarding the bus. Ex. 1; Ex. 2. Hulett's disabilities and size compared to Galvin and Coleman rendered him little threat to Galvin and Coleman. Ex. 1; Hulett Dep. 200:17, 202:8-10 (Ex. 7). Hulett was defenseless against Galvin and Coleman, as shown in the video. Ex. 1. There was also no risk that Hulett could have accessed any sort of object to use as a weapon while holding onto the pole with his right arm and having a paralyzed left arm. Ex. 1; 50-h Hearing 27:1-14 (Ex. 8).

Third, Hulett was not actively resisting arrest. Hulett's only noncompliance was verbal refusal to obey the defendants' unlawful orders while he remained standing in the same position holding onto a pole. Sgt. Galvin Dep. 196:2-13 (Ex. 12); Coleman Dep. 102:11-21 (Ex. 11). Syracuse Police Department Taser training slides state that officers should not use their Tasers in response to verbal defiance. Ex. 71 at 400. Any resistance he used was justified since Galvin's and Coleman's contact was unlawful. *See Niles*, 2009 WL 799971 at *7-8, *cf.* supra § II.

Fourth, Hulett never attempted to evade arrest by flight. Rather, Galvin and Coleman tased and arrested Hulett for *not moving*. Ex. 1; Ex. 1. The only thing Hulett attempted to do was peacefully ride a bus to the store in compliance with all of Centro's rules and regulations.

In addition to none of the *Graham* factors justifying Galvin's and Coleman's uses of force, additional circumstances make their uses of force unnecessary under the circumstances. Syracuse Police Department Officers are trained to consider additional factors before using force, including the potential consequences and injury to Hulett. Ex. 69 at 619. Galvin and Coleman gratuitously inflicted pain and caused injury in a manner that no reasonable juror could find was a reasonable response to the circumstances. Hulett's brain injury and other disabilities rendered him more susceptible to injury from being tased and should have been considered by

7

Galvin and Coleman. *Id.* They are trained to consider the number of officers compared to the number of suspects, and the suspect's size and physical condition. *Id.* Here, there were two officers and a man with several disabilities who was smaller than both of the officers. Ex. 1. Galvin and Coleman testified that they were aware of Hulett's obvious disabilities. Sgt. Galvin 143:10-13, 142:15-18 (Ex. 12); Coleman Dep. 139:22-24, 43:19-45:24 (Ex. 11). And Chief Fowler testified that an officer should exclude all other options before tasing a visibly handicapped person. Ex. 15 at 97:8-98:3. When Hulett attempted to explain his disabilities and rights to them, they continued shouting unlawful orders at him and became increasingly aggressive as they prepared to tase him rather than converse with him. Ex. 1. Officers are also trained to consider other use of force options, including a baton, which could have been used to tap on Hulett's arm or wrist but was not. Coleman Dep. 24:18-25:11, 25:23-26:16, 107:3-8 (Ex. 11). Galvin and Coleman also escalated rather than deescalate the situation by aggressively repeating orders at Hulett rather than conversing with him. Ex.1; Ex. 2; Coleman Dep. 65:18-66:24, 69:16-25, 70:2-8 (Ex. 11); Layman Dep. 44:20-45:4 (Ex. 31) ; Sgt. W. Galvin Dep. 73:20-74:14, 76:21-78:8 (Ex. 12); Fowler Dep. 68:22-69:11, 94:18-95:5, 96:3-11, 97:2-7 (Ex. 15). The circumstances were not tense or rapidly evolving, thus not requiring Galvin and Coleman to make split-second judgments about uses of force. *See Thomas*, 165 F.3d at 143, *cf.* Ex. 1.

Of importance, Galvin tased Hulett in explicit violation of numerous instructions in the Syracuse Police Department's TASER International training slides. First, Galvin was trained that "Multiple CEW applications (each 5 seconds of discharge) cannot be justified solely on the grounds that a suspect fails to comply with a command, absent other indications that the suspect is an immediate threat or about to flee (from a serious crime). This is particularly true when more than one officer is present to assist in controlling a situation." Ex. 71 at 399-400. Galvin testified that he depressed the Taser trigger continuously for 12 seconds. Sgt. Galvin Dep. 192:2-18 (Ex. 12). And "holding the trigger back may result in … cumulative subject injury. Ex. 71 at 401. He tased Hulett first in probe mode, then immediately in drive stun mode, and then again in drive stun mode as he pushed Hulett out of the bus with his foot. Ex. 1; Sgt. Galvin Dep. 217:17-

218:4, 121:2-7, 122:15-16; Ex. 54. Taser training slides also teach that using a Taser in probe mode "constitutes an intermediate, significant level of force that must be justified by a strong government interest." Ex. 71 at 398.

When Galvin dragged Hulett by his right leg, with his left leg folded underneath him in an unnatural position, on the pavement outside the bus, he did so with the taser probes still embed in his back. Ex. 1; Sg. Galvin Dep. 135:22-136:2. This caused the probes to be "wedged in his back pretty deep." Ex. 14 at 84:8-17, 38:14-17. This underscores Galvin's brutality in dragging Hulett across the pavement with the probes still in his back. Such a callous and inhumane act drove the probes deeper into his back, causing pain, as evidenced by Hulett's crying out as heard on the bus video. Ex. 1.

Galvin's and Coleman's reports did not record all of their uses of force, such as their dragging of Hulett from the bus and their dragging of Hulett on the pavement by his leg. *See* Fowler Dep. 176:18-177:6 (Ex. 15); Capt. Galvin Dep. 92:24-93:17 (Ex. 22); Ex. 52. City Defendants admit on page 6 of the memorandum that the video depicts Galvin and Coleman dragging Hulett from the bus, but then claim that they dispute what is in the video. The Court must accept the version in the video in deciding summary judgment motions. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Once Galvin and Coleman had removed Hulett from the bus Galvin is heard taunting Hulett, an obviously disabled man, while he was lying incapacitated on the pavement by stating, "Want it again? Want it again? That arm doesn't move? … Your arm move? Can't move? … You gonna cooperate with us? Huh, you gonna cooperate with us? … You wanna talk? That arm doesn't move, motor mouth? That arm doesn't move?" Ex. 2 at 7-8; Ex. 1. Galvin's conduct depicted on the video was especially outrageous as to shock the conscience.

The intrusion of Hulett's Fourth Amendment interests to clearly outweighed any government interest in effecting an unlawful arrest. *See Graham*, 490 U.S. at 397; *Scott*, 550 U.S. at 383. No jury could find that Galvin's tasing of Hulett, a "serious intrusion into the core of the interests protected by the Fourth Amendment," was a reasonable response to the

circumstances. *See, e.g.*, *Tracy*, 623 F.3d at 98; *Towsley*, 2010 WL 5394837, at \*10. Therefore, summary judgment should be granted in Hulett's favor because Defendants' uses of force were unreasonable under the Fourth Amendment as a matter of law. If the Court does not grant summary judgment in Hulett's favor, it at least must not grant City Defendant's motion because of the fact-specific nature of the inquiry. *Amnesty America*, 361 F.3d at 123.

## II.   GALVIN AND COLEMAN SUBJECTED HULETT TO FALSE ARREST.

The Court should grant summary judgment in Hulett's favor for his false arrest and false imprisonment cause of action against Galvin and Coleman and deny City Defendants' motion for summary judgment for this cause of action (Point VIII of Defendants' memorandum). The undisputed facts demonstrate that Galvin and Coleman, under color of state law, illegally and unconstitutionally deprived Hulett of his Fourth and Fourteenth Amendments rights, as enforced by 42 U.S.C. § 1983, by subjecting him to false arrest and false imprisonment.

### A.     Elements of the false arrest and false imprisonment under 42 U.S.C. § 1983

The Fourth Amendment protects citizens' right to remain free from unreasonable seizures, including the right to remain free from arrest without probable cause. *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). The terms "false arrest" and "false imprisonment" are considered to be synonymous since false imprisonment starts at the moment of arrest. *See Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 346 n. 14 (N.D.N.Y. 2001) (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).

The elements of false arrest are: (1) the defendants intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to his confinement; and (4) the confinement was not otherwise privileged (i.e. it was without a justification, such as probable cause to arrest). *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *Sampson*, 160 F. Supp. 2d at 346-47.

Probable cause exists only if "the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). It is an objective inquiry based on the facts known by the arresting officer at the time of the arrest. *Jaegly*, 439 F.3d at 153. An officer does not have probable cause to arrest when a person refuses to comply with an unlawful order. *Niles v. City of Oneida*, 2009 WL 799971, at *7-8 (N.D.N.Y. Mar. 25, 2009). Officers are obligated to make a minimal inquiry before making an arrest. *See Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir, 1994); *Bradley v. Jusino*, 2009 WL 1181617, at*8 (S.D.N.Y. 2009). There is no probable cause to arrest when a reasonable inquiry is not made, especially when it is unclear whether a crime was committed. *Id.*

Under New York Penal Law § 240.20(5), a person is guilty of disorderly conduct when (1) with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof (2) he obstructs vehicular or pedestrian traffic.

Under New York Penal Law § 205.30, a person is guilty of resisting arrest when he "intentionally prevents or attempts to prevent a police officer or peace officer from effecting an *authorized* arrest of himself or another person" (emphasis added). Thus, the elements of resisting arrest are that (1) the person charged intentionally attempted to prevent the arrest of himself; (2) the arrest the person attempted to prevent was supported by a warrant or probable cause; and (3) the person being arrested was aware that he was being arrested. *Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996). A person is justified in reasonably resisting an officer's contact when that officer's contact is unlawful. *Niles v. City of Oneida*, 2009 WL 799971, at *7-8 (N.D.N.Y. Mar. 25, 2009).

**B.      There was no probable cause to arrest Hulett for disorderly conduct.**

It is undisputed that Galvin and Coleman intended to confine Hulett and that Hulett did not consent to his confinement. It is disputed that Hulett was conscious of his confinement (from the point when he was tased) and whether Galvin and Coleman had probable cause to arrest Hulett.

Reasonable officers disagree that Hulett committed a crime or violation on the bus since

former Syracuse Police Department commanding officer Michael Walsh testified that Hulett committed no crimes on the bus. Ex. 26 at 101:19-102:6; *see* Capt. Galvin Dep. 33:7-13 (Ex. 22). And when Assistant District Attorney Jeff Schiano asked Judge Limpert to dismiss the charges against Hulett, he explained that Hulett was not attempting to stop the bus but rather ride the bus, and thus "there is no probable cause to make the arrest." Ex. 6 at 3-4. Furthermore, Wallace testified that Hulett did not have the required mens rea or actus rues for disorderly conduct. *See* N.Y. PENAL LAW § 240.20, *cf.* Ex. 9 at 31:4-6, 11-13, 47:11-48:7. Coleman himself testified that he has never heard of a passenger being charged with disorderly conduct for refusing to sit down or exit a bus when the driver wants the passenger to sit for his safety, and that he believed passengers could either sit or stand, so he had no reason to believe he had probable cause and that Centro's orders to Hulett were lawful. Ex. 11 at 60:18-21; *see also* Ex. 11 at 84:22-23.

Although Coleman and Galvin were obligated to make a minimal inquiry before arresting Hulett, especially since it would not have been clear to them that a crime was committed upon arriving to the bus, they made no inquiry whatsoever. *See* Ex. 9 at 38:9-12, Ex. 11 at 148:13-149:9, Ex. 12 at 141:22-142:4, Ex. 1, Ex. 2, Ex. 39, Ex. 38, *cf. Oliveira*, 23 F.3d at 647. Both Coleman and Galvin immediately gave Hulett orders and ultimatums without ever engaging him in conversation. Ex. 1; Ex. 2. Galvin and Coleman also failed to speak with any eyewitnesses or credit Hulett's claim that his rights as a citizen with disabilities were being violated by Centro Defendants. Ex. 1; Ex. 2. Galvin claims that when he arrived at the hub, Coleman told him that the bus driver wanted Hulett to either sit down or exit the bus, but Galvin did not conduct an investigation to determine if the bus driver could lawfully make that request of Hulett. Ex. 1.

### C.   There was no probable cause to arrest Hulett for resisting arrest.

Galvin and Coleman did not have probable cause to arrest Hulett for resisting arrest because the arrest they were affecting was not authorized and not supported by probable cause, as explained above. N.Y. PENAL LAW § 205.30; *Curry*, 316 F.3d at 336. And any resistance Hulett used was justified since Galvin's and Coleman's contact was unlawful, as explained above and in Hulett's cross-motion and response to Centro Defendants' summary judgment

12

motion. ADA Schiano asked the Court to dismiss the resisting arrest charge because where there was no probable cause for disorderly conduct there could be no valid resisting arrest. Ex. 6 at 4.

Hulett was also unaware that he was being arrested since Galvin did not tell him that he was under arrest until after he tased Hulett and Hulett was lying incapacitated on the pavement, as the video shows. Ex. 1; Ex. 2 at 7. The Court must accept the version in the video in deciding summary judgment motions. *Scott v. Harris*, 550 U.S. 372, 380 (2007). He thus could not have attempted to prevent his arrest. N.Y. PENAL LAW § 205.30; *Curry*, 316 F.3d at 336. Therefore, summary judgment should be granted in Hulett's favor, because based on what Galvin and Coleman knew at the time of arresting Hulett, they did not have probable cause to arrest him for disorderly conduct or resisting arrest.

## III.   GALVIN AND COLEMAN SUBJECTED HULETT TO MALICIOUS PROSECUTION.

The Court should grant summary judgment in Hulett's favor for his malicious prosecution cause of action against Defendants Galvin and Coleman and deny City Defendants' motion for summary judgment for this cause of action (Point IX of Defendants' memorandum). The Fourth Amendment protects citizens from unreasonable seizures, including malicious prosecution. *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 353 (N.D.N.Y. 2008). The undisputed facts demonstrate that Galvin and Coleman, under color of state law, illegally and unconstitutionally deprived Hulett of his rights under the Fourth and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983, by subjecting him to malicious prosecution.

### A.   Elements of the malicious prosecution claims under 42 U.S.C. § 1983

The elements of malicious prosecution are: (1) the defendants initiated or continued a criminal prosecution against the plaintiff; (2) they initiated the criminal prosecution without probable cause; (3) the defendants acted with malice; (4) the prosecution terminated in the plaintiff's favor; and (5) the plaintiff's Fourth Amendment rights were implicated by a sufficient post-arraignment restraint on his liberty. *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000); *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Phillips*, 571 F. Supp. 2d at 353.

13

Under the first element, defendants played a role in initiating prosecution when they filed reports that caused the plaintiff to be arraigned or gave prosecutors false evidence that was used to file formal charges. *Ricciuti*, 124 F.3d at 130; *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994).

Under the second element, there is no probable cause when the defendants had insufficient facts to warrant a prudent person in believing they could successfully prosecute the plaintiff. *Phillips*, 571 F. Supp. 2d at 354; *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999); *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (the question is "whether there was knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of."). The court must consider only the facts available when the officer initiated the criminal prosecution. *Phillips*, 571 F. Supp. 2d at 354. Officers' failure to provide exculpatory evidence to the prosecutor, or further inquire about exculpatory evidence when a reasonable person would have done so, demonstrates lack of probable cause. *Cannistraci v. Kirsopp*, 2012 WL 1801744, at *11-12 (N.D.N.Y. May 16, 2012) (citing *Lowth v. Town of Cheecktowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *Korthas v. City of Auburn*, 2006 WL 1650709, at *5 (N.D.N.Y. June 9, 2006). If an officer had probable cause to arrest, subsequent exculpatory evidence eliminates probable cause to believe prosecution could be successful. *Lowth*, 82 F.3d at 571.

Under the third element (defendants acted with malice), the plaintiff needs to prove only that the defendant initiated the criminal prosecution from a wrong or improper motive — for a reason other than to see the ends of justice served. *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994). The plaintiff does not need to prove that the defendants were motivated by spite or hatred. *Id.* Malice is typically shown by circumstantial evidence. *Id.* at 631. For example, malice can be inferred from a finding that officers lacked probable cause to initiate criminal proceedings, because it shows that the officers did not believe in the plaintiff's guilt. *Id.*; *Lowth*, 82 F.3d at 573; *Phillips*, 571 F. Supp. 2d at 355. Where there is no question of material fact as to probable cause, there is generally also no question of material fact at to malice. *See id.*

Under the fourth element, termination of the criminal proceeding must have been on the

14

merits or otherwise indicated the plaintiff's innocence (implied a lack of reasonable grounds for the prosecution). *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997).

Under the fifth element, a post-arraignment court appearance amounts to post-arraignment seizure for Fourth Amendment purposes. *Rohman*, 215 F.3d at 215.

**B.    Galvin and Coleman initiated and continued a criminal prosecution.**

The undisputed facts demonstrate that Defendants Galvin and Coleman arrested Hulett and thereby initiated the disorderly conduct and resisting arrest prosecution. Before Hulett was transported to the jail from the Centro hub they conversed and decided disorderly conduct and resisting arrest were the appropriate charges to file against Hulett. Ex. 11 at 142:13-143:14. They filed an arrest report and supplemental incident reports that caused Hulett to be arraigned. *See* Ex. 52, *cf. Ricciuti*, 124 F.3d at 130; *Cook*, 41 F.3d at 79 (2d Cir. 1994). Coleman signed the accusatory instruments and filed the charges. Ex. 11 at 144:23-145:3, 159:23-25. Galvin and Coleman also provided false evidence to the prosecutors by including false statements in their reports, such as their statements that they told Hulett he was under arrest before tasing him and removing him from the bus. *See id.*, *cf.* Ex. 52 *and* Ex. 1 *and* Ex. 2 at 7. Chief Fowler testified that he did not hear Galvin tell Hulett in the video that he was under arrest, and if he did not, then his report would be untruthful and "would be perjury." Ex. 15 at 243:12-244:17.

**C.    There was no probable cause for Galvin and Coleman to believe Hulett could be successfully prosecuted.**

Galvin and Coleman failed to secure and provide exculpatory evidence and evidence to the prosecutor and to further inquire about exculpatory evidence when a reasonable officer would have done so. *See Cannistraci*, 2012 WL 1801744, at *11-12. The video from Centro bus 1249, hub videos, videos from other buses at the hub, and witness statements were exculpatory evidence. *See* Ex. 1; Ex. 2. Syracuse Police Department policies require officers to take third party witness statements and collect video evidence, but Galvin and Coleman did not do so, believing it to be "unnecessary". Ex. 69 at 570; Ex. 15 at 175:19-25; Ex. 11 at 119:6-120:11, 80:23-84:6, 120:15-21; Ex. 12 at 155:13-156:10, 164:11-15, 15315-22, 15:8-12. Galvin's and

Coleman's failure to secure the exculpatory evidence and evidence of their uses of force contributed to the hub videos and videos from the other buses to be spoliated. The one bus video that was preserved and the reports from Wallace and Robinson were collected and written and sent to the District Attorney's Office by Michael Walsh, independent of the Syracuse Police Department. Letter from Michael Walsh to Alison Fineberg, dated May 13, 2013 (Ex. 92).

Defendants also withheld from the District Attorney's Office photos of Hulett's back and injuries taken by Evidence Technician Bruce Terry. Ex. 4; *see* Ex. 61. In fact, Hulett's criminal defense attorney never received photos or videos from the District Attorney's Office, and did not receive Terry's photos until he made a supplemental request for them during this civil action. Galvin and Coleman did not have probable cause to believe that Hulett could be successfully prosecuted for disorderly conduct and resisting arrest.

>        D.      <u>**Galvin and Coleman acted with malice toward Hulett.**</u>

Since the defendants lacked probable cause to initiate criminal proceedings against Hulett, malice can be inferred. *See Rounseville*, 13 F.3d at 630. Additional evidence of Galvin's and Coleman's malice is the following: Galvin and Coleman spoliated exculpatory video evidence. Coleman learned of Hulett's injuries after he spoke with Officer Ciciriello at the hospital on May 4, 2013, after Ciciriello had escorted Hulett there. Ex. 11 at 126:9-14. Yet Coleman's supplemental incident report was not approved until May 9, 2013 and he did not mention in it any injuries to Hulett. Ex. 52. This evidence arguably was exculpatory and impeaching evidence that Coleman was legally obligated to provide to the District Attorney under *Giglio v. United States*, 450 U.S. 150 (1972). Galvin and Coleman failing to include all of their uses of force in their reports also evidences malice. Coleman testified in his deposition that he was on the bus while Galvin dragged Hulett by his leg and did not see it, yet the video shows that Coleman was assisting with the dragging. *See* Ex. 11 at 99:8-16, *cf.* Ex. 1. Galvin told the Office of Professional Standards and testified that he dragged Hulett by his leg with the taser probes still embedded in his back and his leg bent underneath him in an unnatural position because Hulett had refused his order to get up and move out of the way of the bus. The video and

16

transcript proves Galvin's claim entirely false and that he instead told Hulett not to move. *See* Ex. 1 *and* Ex. 2 at 7-8, *cf.* 106 at 437-38. Galvin approved Coleman's report of Galvin's uses of force, despite his bias. Ex. 52; Rossi Dep. 136:14-25 (E. 30); Ex. 11 at 126:25-127:23 (testifying that he thought the desk sergeant or a lieutenant had approved it). Even after the bus video that proved Hulett committed no crimes was published, and ADA Schiano told Galvin that the charges would not be prosecuted because there was no probable cause, Galvin persisted in trying to prosecute Hulett by discussing the possibility of charging him instead with criminal trespass. Shoff Dep. 69:5-70:9 (Ex. 21); Sgt. Galvin Dep. 166:5-167:12 (Ex. 12).

   **E.   The prosecution against Hulett terminated in his favor.**

   The disorderly conduct and resisting arrest prosecution terminated in Hulett's favor when Judge Limpert dismissed the charges on the merits. ADA Jeff Schiano asked the Court to dismiss the charges against Hulett and stated, "We have conducted our own investigation, obviously, and we've gathered all of the available evidence that is still available. After reviewing it, Judge, and reviewing the law, I'm going to join in the Defense's motion based on legal sufficiency. I think the charge disorderly conduct as it's charged that Mr. Hulett intended to cause public inconvenience and annoyance of an alarm by disrupting traffic, particular traffic. It just doesn't fit in this case. Certainly, he wasn't in front of the bus trying to stop the bus or something like to that effect. In fact, to the contrary, Judge, it appears from the … video that he just wanted to leave on the bus. Based on that, it appears that there is no probable cause to make the arrest, therefore, … there could be no legal resisting arrest charge that would be sustainable. Based on that, Judge, we are going to join the Defense's motion on the basis of … legal sufficiency." Ex. 6 at 3-4. Schiano's statements to the Court unambiguously indicate Hulett's innocence and express a lack of reasonable grounds for the prosecution. *See Murphy*, 118 F.3d at 948.

   **F.   Hulett's suffered a sufficient post-arraignment restraint on his liberty.**

   Hulett suffered post-arraignment liberty restraints. Officer Ciciriello gave Hulett an appearance ticket for May 21, 2013, but because of Hulett's surgery on his fractured hip and hospital stay, he was not arraigned until June 10, 2013. *See Rohman*, 215 F.2d at 215, *cf.* Ex. 60,

Ex. 62 Ex. 20 at 50:3-12. Hulett had another court date on July 25, 2013, and then a hearing on August 29, 2013, where Judge Limpert dismissed his charges. Ex. 6 at 2.

Therefore the Court must grand summary judgment in Hulett's favor for his malicious prosecution claim against defendants Galvin and Coleman.

## IV.   HULETT CONCEDES THAT THE OFFICIAL CAPACITY SUITS ARE REDUNDANT.

Hulett respectfully concedes that a suit against an officer in his official capacity is essentially a claim against the municipality when the municipality is a named party. But Hulett notes that the evidence in section V and establishes that Fowler could have been sued in his individual capacity, so Hulett requests leave to amend his complaint in the interest of justice under FRCP 15(a)(2).

## V.   FOWLER AND CITY OF SYRACUSE SUBJECTED HULETT TO EXCESSIVE FORCE, FALSE ARREST, AND MALICIOUS PROSECUTION.

The Court should grant summary judgment in Hulett's favor for his excessive force, false arrest, and malicious prosecution causes of action against Defendants Fowler and City of Syracuse (under *Monell*) and deny City Defendants' motion for summary judgment (Point III of Defendants' memorandum). The undisputed facts demonstrate that Defendants deprived Hulett of his rights under the Fourth and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983, by maintaining policies and customs that caused the violations of Hulett's rights.

### A.   Elements of the *Monell* Claim against Fowler and City of Syracuse

For a § 1983 claim against a municipality, the plaintiff prevails when he proves that a municipal policy or custom caused the violations of the plaintiff's constitutional rights. *Monell v. New York City Dep's of Social Serv*., 436 U.S. 658, 694 (1978). A custom is proven when the evidence shows that the unconstitutional practice is so "persistent or widespread as to constitute a custom or usage with the force of law." *Patterson v. County of Oneida, N.Y*., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotations omitted). A municipal policy or custom need not be explicit but can be established from inaction, such as a failure to train, supervise, or discipline employees that amounts to "deliberate indifference" to the constitutional rights of citizens with whom the

18

municipality's employees interact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality's policy of "deliberate indifference" in training or supervising employees, is established when "(1) a policymaker knows to a moral certainty that city employees will confront a particular situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007) (internal quotations omitted).

"Deliberate indifference" in training employees involves the municipality's "conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights." *Wray*, 490 F.3d at 196. There cannot be deliberate indifference for failing to train employees for rare or unforeseen events. *Id.* at 196. A municipality is deliberately indifferent when policymakers choose to retain a training program for which they have actual or constructive notice that a particular omission in the training program causes city employees to violate citizens' constitutional rights. *Connick*, 563 U.S. at 61. Summary judgment is appropriate when the undisputed facts establish that the training program is shown to have specific deficiencies that caused the deprivation of the plaintiff's constitutional rights. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). Even where a municipality does have a valid use of force (or taser use) policy in place, when the municipality causes its officers to apply it unconstitutionally, that unconstitutional application can be considered a municipal policy. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125-26 (2d Cir. 2004).

Where a municipality policymaker fails to investigate, supervise, or discipline its officers for use of excessive force when it was aware of the unconstitutional conduct and approved of it or consciously chose to ignore it (effectively ratifying or adopting as its own the officers' conduct), the policymaker's failure is a policy of deliberate indifference that violates § 1983. *Id.* at 125-26; *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999); *Batista v. Rodriguez*, 702 F.2d 392, 397 (2d Cir. 1983); *Lasher v. City*

*of Schenectady*, 2004 WL 1732006, at \*10 (N.D.N.Y. Aug. 3, 2003). When policymakers review subordinates' conduct, they review the conduct for conformity with their policies (i.e., approval of conduct reveals what the municipality's policy was). *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Policymakers ignoring an obvious need for supervision — such as repeated complaints of civil rights violations — establishes deliberate indifference. *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir. 1995).

Deliberate indifference can be inferred when the municipality does not respond to the complaints with a meaningful attempt to investigate or prevent further incidents, regardless of whether the claims are valid. *Id.* In *Galindez v. Miller*, the District Court of Connecticut rejected the defendants' argument that having a complaint process is a shield to municipal liability. 285 F. Supp. 2d 190, 198-99 (D. Conn. 2003). The court asserted that the critical question is whether the procedural safeguards provided by the complaint process are "reasonably adequate or obviously deficient." *Id.* at 198. The court held that a reasonable jury could conclude that the City does not take complaints of excessive force seriously, "as shown by a pattern of allowing complaints to molder and turn gray without adequate attention (until the epiphany of federal civil litigation inspires action), and fails to impose any form of discipline on officers against whom excessive force complaints have been lodged." *Id.* at 199. The court further found that a reasonable jury could conclude that "Hartford had a policy or pervasive pattern of deliberate indifference to the possibility that its officers were prone to use excessive force, as demonstrated principally by Hartford's failure to reasonably investigate complaints and the absence of punitive consequences for any accused officer, that such policy or pattern , may have emboldened or implanted a sense of impunity in its officers, resulting in the challenged first offense by this defendant [officer], and that the offense would not have occurred had proper investigation and police discipline procedures been in place." *Id.* at 200. The court determined that the case should proceed to a trial by jury on the claim against the city. *Id.* at 200.

In *Fiacco v. City of Rensselaer*, the Second Circuit affirmed a jury verdict of municipal liability where there were repeated failures to investigate complaints or take statements other

than those of the officers involved and to impose any discipline. 783 F.2d 319 (2d Cir. 1986).

A single violation of constitutional rights establishes deliberate indifference when recurring violations are a "highly predicable consequence" of the inadequate training or supervision, even though it is "ordinarily necessary" to demonstrate a pattern of similar constitutional violations. *Connick*, 563 U.S. at 62; B*oard of County Com'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 409 (1997); *Amnesty America*, 361 F.3d at 125-29 ("A single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability."); *Canton*, 489 U.S. at 400 & n. 10 (giving as an example a city arming its officers with firearms and deploying them into the public to make arrests without training them about constitutional limits on the use of deadly force).

### B.   Failure to Discipline

The record establishes that Chief Fowler's failure to discipline his officers is a policy of deliberate indifference. The Citizen Review Board sustained two excessive force allegations involving Tasers in 2013, yet Fowler testified that he could not recall having ever disciplined an officer for using their Taser inappropriately. Ex. 65 at 22; Ex. 15 at 113:23-114:5. Lieutenant David Brown of the Office of Professional Standards testified that he has investigated Taser excessive force complaints no more than twice. Ex. 23 at 57:6-14. Captain Thomas Galvin, who was the commanding officer of the Office of Professional Standards testified that he had never recommended to the Chief that any officer be disciplined for inappropriate use of their Taser. Ex. 22 at 80:11-16. He did recall his office investigating the tasing of high school student Andre Epps, which resulted in a civil lawsuit that brought about significant changes to the Syracuse Police Department's Taser policy as part of the settlement. Ex. 22 at 42:8-43:11. Similarly, when Chief Fowler was shown the NYCLU report that discussed the Syracuse Police Department's tasing of a mentally ill man who was tased by three different officers with between three and six Taser cycles each, Fowler testified that he was not familiar with the mentally ill person and that he therefore did not know if the Office of Professional Standards had investigated the force used on him and if any actions were taken. Ex. 15 at 108:22-111:8. Fowler did not discipline Galvin,

Coleman, or Lieutenant Shoff in relation to this incident.  Ex. EE part 1 to Atty. D'Agostino

Decl. at 311-82 Ex. 106 at 430-32; Ex. 15 at 150:15-152:22, 242:3-243:11.

Hulett respectfully directs the Court to paragraphs 181 through 195 of his Statement of

Material Facts for further evidence of this policy of failing to discipline.

### C.    Failure to Supervise and Train

The City of Syracuse's pattern and practice of having supervisors that are ignorant of

Tasers and Taser training review subordinates' uses of their Taser is a policy of deliberate

indifference to citizens' constitutional rights. The City of Syracuse is also deliberately indifferent

to the possibility that its officers will violate the constitutional rights of citizens with disabilities,

despite knowing to a moral certainty that officers will confront citizens with disabilities. And

Chief Fowler's failure to adequately oversee and review his Department's Taser training

program is a policy of deliberate indifference. Hulett respectfully directs the Court to paragraphs

196 through 271 of his Statement of Material Facts for evidence of these policies of failing to

supervise and train.

### D.    Failure to Appropriately Investigate Galvin's and Coleman's Uses of Force

The Syracuse Police Department has a policy of deliberate indifference to uses of force

and citizens' injuries by conducting severely deficient investigations and failing to investigate

until a notice of claim is filed or news story is published. Hulett respectfully directs the Court to

paragraphs 272 through 365 of his Statement of Material Facts for support for this policy.

### E.    Causal Connection

Defendant Sergeant Galvin had used his Taser in probe mode one other time, on August

11, 2009, and he approved his own incident report. Ex. 64 at 7562-7565. His 2009 Taser use was

never investigated by the Office of Professional Standards, or otherwise. *See* Ex. EE Part 1 to

Atty. D'Agostino Decl. at 004-309. [3] Galvin was not disciplined for approving his own report

---

[3] Hulett cites to City Defendants' exhibit to avoid violating the protective order dated February 10, 2015, as City Defendants have done with their own clients' personnel records. The Southern District of New York has held, "If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential." *United States v. Gangi*, 1 F. Supp. 2d 256, 263 (S.D.N.Y. 1998). Accordingly, City Defendants have waived the privacy protection afforded by the protective order by disclosing their confidential records to the public via PACER on December 19, 2016.

involving using his Taser. *Id.* Permitting Galvin to approve his own reports without recourse or investigation caused Galvin to believe his excessive uses of force would have no recourse and encouraged him to continue to act outside his Syracuse Department training. This is evidenced by Galvin again approving his own use of force in this case by approving Coleman's report of Galvin's use of force, which Defendants' expert testified was improper and biased. Ex. 52; Rossi Dep. 136:14-25 (Ex. 30). And incredibly, Chief Fowler, former First Deputy Chief Barrette, and Captain Galvin all testified that they saw no conflict of interest for an officer who used force approving a subordinate officer's report of that force. Ex. 15 at 188:8-189:13; Ex. 24 at 76:4-77:8; Ex. 20 at 87:19-88:20. Coleman testified that either a desk sergeant to May 3 or a lieutenant would have approved his report. Ex. 11 at 126:25-127:23. The Court should grant summary judgment in Hulett's favor.

## VI.   GALVIN AND COLEMAN ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants Coleman and Galvin are not entitled to qualified immunity as an affirmative defense. Qualified immunity only protects government officials performing discretionary duties from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). A right is "clearly established" if it "meets one of three tests: (1) it is defined with reasonable clarity; or (2) the Supreme Court or [Second] Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful." *Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir. 1994). More broadly, the question for determining qualified immunity is whether the state of the law in 2013 gave the defendants fair warning that their treatment of Hulett was unconstitutional. *See Hope v. Pelzer*, 536 U.S 730, 741 (2002).

Where government officials violated a plaintiff's clearly established statutory or constitutional rights, the officials are not entitled to qualified immunity where officers of reasonable competence could disagree as to the lawfulness of the defendant officer's conduct. *Zellner*, 494 F.3d at 367. They are entitled to qualified immunity only if their belief that their

23

acts did not violate those rights was objectively reasonable. *Id.*

The right to be free from the use of excessive force has long been clearly established. *Calamia v. New York*, 879 F.2d 1025, 1036 (2d Cir. 1989). The rights to be free from malicious prosecution and false arrest have also been clearly established. *Cook*, 41 F.3d at 78-79. Therefore, the question is whether it was objectively reasonable for defendants Coleman and Galvin to believe that their conduct did not violate these rights.

An objectively reasonable police officer would have known that tasing Hulett — a citizen with obvious disabilities who was doing nothing more than standing on a bus while holding a pole and asserting his rights — violated Hulett's clearly established right to be free from the use of excessive force. This is especially true since Hulett's resistance to his arrest was justified where his arrest was unlawful; it was thus objectively unreasonable to react to Hulett's justified resistance by tasing him. Hulett's police practices expert Michael Lyman explains the unreasonableness of their levels of force in great detail in his report. Ex. 1 to Lyman Aff. The training slides used for Galvin and Coleman's Taser training also establish the unreasonableness. Furthermore, Galvin and Coleman were not in a rapidly involving situation where they were required to make split-second judgments since Hulett was calmly standing on the bus waiting for it to leave. *Cf. Thomas*, 165 F.3d at 143. Anything tense about the situation was the result of the defendants' own unnecessary actions. Accordingly, Coleman and Galvin are not entitled to qualified immunity for their excessive force.

An objectively reasonable police officer also would not have believed probable cause existed to arrest and prosecute Hulett for disorderly conduct and resisting arrest. No reasonable police officer could think it is lawful to arrest and charge a person with crimes without probable cause, without securing any evidence of their uses of force, and for the purpose covering up their uses of excessive force. Accordingly, based on the undisputed facts, Coleman and Galvin are not entitled to qualified immunity for the malicious prosecution and false arrest claims.

Therefore, Defendants Coleman and Galvin are not immune as a matter of law from liability for excessive force, malicious prosecution, or false arrest.

VII.   **BECAUSE DEFENDANTS RENDERED IMPORTANT EVIDENCE UNAVAILABLE, THEIR MOTION MUST BE DENIED AND SPOLIATION SANCTIONS IMPOSED.**

City Defendants' motion for summary judgment is based in part on their version of what occurred outside the bus. Because Defendants rendered unavailable the videos that would have established the actual facts of what occurred outside the bus, the Court must deny Defendants' summary judgment motion and grant Hulett's motion for spoliation sanctions.

A.   <u>Legal Standard</u>

A party's destruction, intentional or not, of non-privileged electronically stored information relevant to anticipated or ongoing litigation undermines the long-standing common law principal that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A party spoliates evidence when an agent of the party destroys or significantly alters evidence, or fails to preserve it for another's use as evidence, in a pending or reasonably foreseeable litigation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). The duty to preserve evidence relevant to future litigation exists even where a non-party is the spoliator. *See, e.g., Gordon Partners, et al. v. Blumenthal*, 244 F.R.D. 179, 200-01 (S.D.N.Y. 2007). A party who spoliates evidence should not be permitted to benefit from such wrongdoing. *West*, 167 F.3d at 779.

A court should impose a sanction to "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine, which are designed to "(1) deter parties form engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779.

Federal Rule of Civil Procedure 37(e) — Failure to Preserve Electronically Stored Information — was enacted in 2015 and replaced the 2006 rule. Where the party acted with intent to deprive another party of the information's use in the litigation, the court may impose severe corrective measures. The court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information as

unfavorable to the party; or (C) … enter a default judgment." FED. R. CIV. P. 37(e)(2).

Where intent cannot be proven, sanctions are still available: "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court … upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1). According to the commentary to the 2015 Amendment to FRCP 37(e), where intent cannot be proven, "it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." It might also be appropriate to permit the parties to present evidence and argument to the jury regarding the loss of information, and to instruct the jury on evaluating this evidence. *See Mali v. Federal Ins. Co.*, 720 F.3d 387, 391-93 (2d Cir. 2013).

Because a permissive adverse inference jury instruction is not a sanction, such an instruction to a jury does not require the same factual findings necessary to impose a spoliation sanction. *Mali*, 720 F.3d at 391-93 (2d Cir. 2013); *Thomas v. Butkiewicus*, 2016 WL 1718368, at *5, 16 (D. Conn. Apr. 29, 2016). Such an instruction is merely part of a court's explanation of circumstantial evidence that the jury is free to draw inferences on depending on its findings. *Mali*, 720 F.3d at 392. The court need not find any facts to justify such an instruction. *Id.* at 393.

In a permissive adverse inference instruction courts have instructed juries that if it finds that the defendant proved by a preponderance of the evidence that the unavailable evidence exists or existed, that it was in the exclusive possession of the non-moving party, and that its non-production was not satisfactorily explained, then it may infer (although it is not required to do so), that if the evidence had been produced, it would have been unfavorable to the plaintiffs. *Mali*, 720 F.3d at 391; *Thaqi v. Wal-Mart Stores East, LP*, 2014 WL 1330925, at *7-8 (E.D.N.Y. Mar. 31, 2014). And courts have further instructed that the jury may give the inference, whatever force or effect it thinks appropriate under all the facts and circumstances. *Id.* Where "the record would allow a jury to draw an adverse inference against [a defendant] concerning spoliation, [the

26

defendant's] summary judgment motion must be denied." *Thaqi*, 2014 WL 1330925, at 10.

Punitive monetary sanctions and attorney's fees might also be appropriate when a part spoliates evidence. *GN Netcom, Inc. v. Plantronics*, 2016 WL 3792833, at *13-14 (D. Delaware July 12, 2016) (imposing a $3 million sanction and attorney's fees for spoliating evidence in bad faith); *Dataflow, Inc. v. Peerless Ins. Co.*, 2013 WL 6992130, at *11 (N.D.N.Y. June 6, 2013); *Passlogix, Inc. v. 2FA Technology, LLC*, 708 F. Supp. 2d 378, 412 (S.D.N.Y. 2010) (imposing a $10,000 sanction for spoliating evidence).

The District of Connecticut imposed a mandatory adverse inference jury instruction for the DOC's failure to preserve the complete security surveillance footage that recorded assaults on the plaintiff by other inmates, where events leading up to an assault were not recorded and where videos from other cameras were not preserved. *Thomas v.*, 2016 WL 1718368, at *17.

**B.**   **Spoliated Evidence**

City Defendants spoliated the following evidence: (1) videos from the Centro hub and other buses at the hub; (2) Coleman's original call to dispatch or Galvin to request assistance at the hub; (3) Galvin's call to Lieutenant Richard Shoff; and (4) the complete Taser Use Report.

Hulett respectfully directs the Court to section VII.A of his Statement of Material Facts for a complete recitation of the facts relevant to City Defendants' spoliation of important and relevant video evidence. Several cameras at the Centro transit hub and on other buses at the hub recorded the events that occurred outside the bus Hulett was attempting to ride after Galvin and Coleman forcefully removed him. Statement of Material Facts ¶¶ 496-501. Under their own policies and their expert's testimony, Defendants had an obligation to secure the video evidence that captured their uses of force at the Centro hub. Walsh Dep. 15:10-16:7, 63:21-64:19 (Ex. 26); Coleman Dep. 55:10-56:19 (Ex. 11). Rossi Dep. 57:23-58:15, 66:19-67:11, 154:8-155:20 (Ex. 30); Capt. Galvin Dep. 165:8-15 (Ex. 22); Brown Dep. 123:25-124:16 (Ex. 23). Chief Fowler testified that videos from the Centro hub would have been pertinent to the investigation and should have been secured as evidence. Ex. 15 at 178:17-179:13, 181:6-182:8. But when Chief Fowler was asked if anyone sought to find out if video from the Centro hub existed, Chief

Fowler testified in response, "There's a lot of things that don't exist in our society, but we don't go out searching for them because we don't know if they exist or not. So … we don't go chasing unicorns in my line of business." *Id.* at 179:15-23 (Ex. 15). Coleman, Sergeant David Procopio, and former First Deputy Chief David Barrette were aware that there are numerous cameras at the hub, yet the video evidence was never secured. Coleman Dep. 79:19-23, 86:10 (Ex. 11); Procopio Dep. 14:25-15:11 (Ex. 25); Barrette Dep. 58:15-599:25 (Ex. 24).

Hulett's Statement of Facts discuss the video surveillance system and third party vendor (Cedar Path Solutions Group) that is common to the Syracuse Police Department and Centro, SPD's and Centro's intention to link (federate) their systems so that SPD could have access to Centro's video cameras, and testimony and evidence that their systems were federated. This establishes that the Syracuse Police Department was well aware that video evidence existed at the Centro hub and/or police officers had access to that evidence. *See* ¶¶ 527-529, 533, 557-574.

The record contains substantial evidence of conspiracy between the Syracuse Police Department (SPD) and Centro to spoliate important evidence of Defendants' unlawful conduct. Hulett pled this in his amended complaint (¶ 39 and relief) but neglected to add a cause of action. Ex. 106. SPD is also the security force at the Centro hub, which is coordinated by Walsh and Sergeant David Procopio. *See* Ex. 58; Ex. 25 at 10:10-11:22, 13:5-14:19. Centro's Director of Security Michael Walsh requested SPD's incident reports from Procopio on May 6, 2013, and SPD provided them. Ex. 91 at 837. Walsh testified that Hulett committed no crimes on the bus, yet he still forwarded incident reports and a copy of the bus video to the DA's Office and falsely highlighted that the arrest occurred "on a bus." Ex. 26 at 101:19-102:6; Ex. 91 at 840. Throughout May and June 2013 Walsh prevented Hulett's attorney from gaining access to any videos of the incident. Ex. 91. At least one SPD supervisor requested and received the bus video from Walsh in May 2013. Ex. 26 at 97:4-25, 98:2-11; Ex. 91 at 087; Ex. 37. Centro had viewed additional videos of the incident, yet permitted its destruction, despite Centro anticipating litigation from early May and having received a "Notice to Preserve" all videos of the incident from Hulett' attorney. Ex. 96; Ex. 93; Ex. 91 at 085. This evidence, and other evidence in

28

Hulett's Statement of Facts shows a joint act of conspiring to spoliate relevant and important video evidence of the incident.

City Defendants also spoliated other evidence: Coleman made a call on his radio but the City produced no recording of what he said. Ex. 12 at 111:2-112:10; Ex. 1. Galvin contacted Lieutenant Shoff following his uses of force on Hulett but the City produced no recording of it.

### C.   <u>Sanctions</u>

Because there are many facts in dispute as a direct result of City Defendants' failure to investigate and preserve evidence that is highly probative of facts that they claim are not in dispute, the Court must deny Defendants' summary judgment motion. *See Thaqi v. Wal-Mart Stores East, LP*, 2014 WL 1330925, at *10 (E.D.N.Y. Mar. 31, 2014) ("Where "the record would allow a jury to draw an adverse inference against [a defendant] concerning spoliation, [the defendant's] summary judgment motion must be denied."). The videos from the Centro transit hub and other buses at the hub that Centro and City Defendants failed to preserve and rendered unavailable would have shown exactly what occurred at the Centro hub outside the bus Hulett attempted to ride. It is improper for the defendants to fail to investigate and preserve critical and relevant evidence, rendering it unavailable, and then benefit from that spoliation by arguing that facts are not in dispute because they are no longer contestable. This is not only grounds for denial of City Defendants' summary judgment motion, but also reason for the Court to impose significant sanctions against City Defendants.

Hulett requests that the Court grant default judgment against City Defendants because of their spoliation of critical evidence (excessive force, false arrest, malicious prosecution, and deprivation of medical care, negligence, and *Monell* liability). In the alternative, the Court should (1) give an adverse inference instruction that the unavailable video evidence and complete Taser Use Report, if produced, would have been adverse to City Defendants and would have shown excessive force and malice; (2) preclude City Defendants from putting on any evidence of what occurred outside the bus; (3) give an adverse inference instruction that Coleman's unavailable radio call to dispatch or Galvin, and Galvin's call to Shoff, if produced, would have been adverse

to City Defendants; and/or (5) impose significant punitive monetary sanctions and attorney's fees. Fed. R. Civ. P. 37(e); *GN Netcom, Inc.*, 2016 WL 3792833, at \*13-14; *Dataflow, Inc.*, 2013 WL 6992130, at \*11; *Passlogix, Inc.*, 708 F. Supp. 2d at 412.

Issuing severe sanctions is necessary for deterrence, to place the risk of an erroneous judgment on City Defendants, who have wrongfully created the risk, and to restore Hulett to the same position he would have been in absent City Defendants' destruction of evidence. *See West*, 167 F.3d at 779. City Defendants must not be permitted to benefit from their wrongdoing. *Id.* At the very least, the Court should permit a permissive adverse inference jury instruction. *Mali*, 720 F.3d at 391-93 (2d Cir. 2013); *Thomas v. Butkiewicus*, 2016 WL 1718368, at \*5, 16 (D. Conn. Apr. 29, 2016); *Thaqi v.*, 2014 WL 1330925, at \*7-8.

## VIII.  COLEMAN IS LIABLE IN HIS OFFICIAL CAPACITY UNDER THE ADA.

Although there can be no individual liability under the Americans with Disabilities Act, official capacity claims seeking injunctive relief are proper where there is an ongoing violation of federal law and the relief sought is prospective. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287-89 (2d Cir. 2003); *Nickelson v. Fischer*, No. 9:15-CV-00227 GLS/TWD, 2016 WL 1128181, at \*7 (N.D.N.Y. Feb. 16, 2016); *Ali v. Hogan*, 2013 WL 5466302, at \*9-10 (N.D.N.Y. Sept. 30, 2013). Hulett's amended complaint does not explicitly ask for injunctive relief, but it is included in his request for "any other relief the court deems proper." Ex. 102 at Relief. Implicit in Hulett's amended complaint and lawsuit is a request for the Court to order Defendants Wallace, Robinson, and Coleman to refrain from making assumptions about Hulett's abilities (as Wallace admits that he did), making judgments about safety based on those assumptions (as Wallace admits that he did), and prohibiting Hulett from standing on the bus or riding the bus. Hulett would like the opportunity to ride Centro buses in the future without being discriminated against and forced to sit down or get off the bus, in violation of his rights under the Americans with Disabilities Act and New York Human Rights Law.

The Western District of New York has also allowed for *damages* for official capacity claims. *Shariff v. Goord*, 2005 WL 1863560, at \*5 (W.D.N.Y. Aug. 4, 2005). The court

explained that, "defendants argue that Title II of the ADA … do[es] not allow state actors to be sued in their official capacities. The Court disagrees." *Id.* It then interpreted *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) to allow for money damages for official capacity suits: "Defendants do not dispute that, pursuant to the holding in *Garcia* … the Eleventh Amendment does not bar an action against DOCS for money damages under … the ADA. Since the Eleventh Amendment only shields individual defendants in their official capacities to the same extent that it shields DOCS, it follows that the individual defendants may be sued in their official capacities for violating the ADA and the Rehabilitation Act." *Id.*

A plaintiff alleging discrimination does not need to plead a prima facie case in his complaint but rather need only give the defendant fair notice of the basis for his claims under Federal Rule of Civil Procedure 8(a). FED. R. CIV. P. 8(a); *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In his amended complaint, Hulett pled in paragraph 71 that "Coleman caused Plaintiff to be forcibly removed from the bus and denied him bus service, without any reasonable basis to do so, thereby discriminating against him based on his disability, in violation of the ADA." Ex. 102. And he pled in paragraph 72 that "Alternatively, because Plaintiff needed to use the bus service while standing due to his disabilities, permitting him to do so was a reasonable accommodation which … Coleman denied Plaintiff without any reasonable or legal basis to do so, in violation of the ADA." Ex. 102. Hulett thus sufficiently gave notice of his claim.

Defendants falsely claim it is undisputed that Coleman was an independent contractor for Centro. As discussed in detail in Section VII of Hulett's memorandum of law in response to Centro Defendants' Summary Judgment Motion, and Hulett's response to paragraph 15 of City Defendants' Statement of Material facts, there is substantial evidence that Coleman was not an independent contractor based on the Supreme Court's thirteen factors, and that Coleman was either an employee of Centro, or the Syracuse Police Department was Centro's independent contractor and security force (and employed Coleman). Centro Defendants have supported their claim that Coleman was an independent contractor only with conclusory statements, and an unsigned contract dated eight months after the incident that states he was an independent

contractor. The Court should thus deny City Defendants' motion to dismiss under their Point IV.

## IX.   HULETT'S SUFFICIENTLY PLED HIS N.Y. HUMAN RIGHTS LAW CLAIM.

Coleman, as either an employee of Centro or an employee of the Syracuse Police Department, which was Centro's security force, violated Hulett's rights under New York Human Right Law section 296(2)(a), which prohibits discrimination in places of public accommodation. N.Y. Exec. Law § 296. City Defendants are incorrect that the reasonable accommodations provision of the New York Human Rights Law "applies [only] to housing or employers of disabled people." Although subsections 1, 1-a, 2-a, 3, 3-a, 3-b, and others pertain to employment and housing discrimination, subsection (2)(a) prohibits discrimination in "any place of public accommodation." N.Y. Exec. Law § 296(2)(a).

Hulett's amended complaint alleges that Central New York Regional Transportation Authority "through its bus service, owns and operates a means of public transportation and conveyance and a public accommodation in the City, as those terms are defined by the Human Rights Law." Amended Compl. at ¶ 75 (Ex. 102). Hulett's amended complaint also alleges that Defendants did not provide Hulett with "reasonable accommodations" as required under section 296(2)(a) and defined in section 296(c). Therefore, Hulett's Human Rights Law claim is proper and he sufficiently pled his claim by using the terms used and defined in § 296(2)(a), which is clarified here. *See Woods v. City of Utica*, 902 F. Spp. 2d 273, 285 (N.D.N.Y. 2012). The Court should thus deny City Defendants' motion to dismiss under Point V of its memorandum.

## X.   HULETT CAN RECOVER UNDER HIS SIXTH CLAIM (NEGLIGENCE BY THE CITY), AND HE SUFFICIENTLY ALLEGED A SPECIAL DUTY EXISTS.

Hulett has adequately pled his sixth cause of action (Negligence by the City), and his amended complaint sufficiently alleged that a special duty exists. A plaintiff does not need to plead a prima facie case in his complaint but rather need only give the defendant fair notice of the basis for his claims under Federal Rule of Civil Procedure 8(a). FED. R. CIV. P. 8(a); *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In addition to Hulett's causes of action for excessive force, false arrest, and malicious

prosecution, Hulett also brought a cause of action against City Defendants for deprivation of medical care, which requires proving deliberate indifference to Hulett's medical needs. The cases the City cites pertain to negligence being improper for recovery where only false arrest and malicious prosecution are alleged and are thus narrower than the allegations in this case and inapplicable. If a jury does not find deliberate indifference, the negligence cause of action should remain for the jury's consideration. In light of City and Centro Defendants' spoliation of video evidence relevant to this issue, it is a question for the jury.

The Supreme Court held that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Hulett satisfied the standard of giving Defendants fair notice of the basis for his claims. He pled that Hulett was in police custody from the time he was dragged from the bus and put under arrest and handcuffed, and he thus pled that a special duty existed. *See* Ex. 102 at ¶ 116 (Amended Compl.).

In pages 20 and 21 of their memorandum, Defendants appear to falsely equate the doctrine of respondeat superior with negligent retention hiring or retention of employees. They argue that because Hulett alleges Galvin and Coleman acted within their scope of employment, he cannot prove his negligent hiring or retention claim. But the Court should disregard this argument because Hulett did not bring a negligent hiring or retention claim but rather a respondeat superior claim. Ex. 102 at ¶¶ 84-87. And under the doctrine of respondeat superior, an employer may be vicariously liable when the employee was acting within the scope of his employment and the employee acted in furtherance of the employer's interests and not in furtherance of entirely personal motives. *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014). As Defendants concede in the last paragraph of their sixth point, "there is no genuine issue of material fact that Coleman and Galvin were acting within the scope of their employment." The Court should deny City Defendants' motion to dismiss under their Point VI.

XI.    **HULETT CONCEDES THAT HE CANNOT RECOVER UNDER HIS SEVENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

In response to Point VII of Defendants' memorandum, Hulett respectfully concedes that he cannot recover under his seventh cause of action — intentional infliction of emotional distress — because traditional tort remedies are available in this case where Defendants used excessive force, maliciously prosecuted him, falsely arrested and imprisoned him, and committed acts of assault, battery, and negligence.

XII.   **HULETT HAS ESTABLISHED DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION, AND DEFENDANTS HAVE SPOLIATED DISPOSITIVE EVIDENCE.**

There is sufficient evidence for Hulett's claim of City Defendants' deliberate indifference to his serious medical condition. As City Defendants conceded, "there is evidence from which a rational jury could infer that Defendants intentionally denied or delayed access to medical care or intentionally interfered with the treatment once prescribed." City Defendants' Memorandum of Law at 34 (internal quotation omitted).

Defendants base their argument for summary judgment on disputed evidence — that Hulett refused medical care. The abundant evidence cited in response to paragraphs 62 through 65 and 67 of City Defendants' Statement of Material Facts contradicts this allegation. For example, Hulett adamantly testified that he did not refuse care or transport to the hospital. Hulett Dep. 4:4-9, 185:5-14, 63:25-64:3, 182:14-23, 64:10-12, 66:25-67:20, 186:2-5, 186:22-187:2, 189:5-9, 194:6-10  (Ex. 7); Hulett 50-h 57:22-58:7 (Ex. 8).

When clearing the call, Paramedic Matt Maule is heard telling dispatch, "NTP." The dispatcher then says, "Patient's being transported to the hospital by police?" Maule responds, "That is correct and cleared with 517." Rural/Metro Radio Transmission 0503134 at 046:-1:04 (Ex. 48). But rather than take Hulett to the hospital, the police instead took him to the jail, based on Coleman's decision. Coleman Dep. 116:19-21 (Ex. 11). Maule also testified that he told the police officers that there was a concern that Hulett could have an injury. Maule Dep. 82:7-25, 73:19-74:25 (Ex. 14). When Chief Fowler was shown the photograph of Hulett's back, he testified that he saw two bumps on his back and stated "absolutely [it] didn't look normal. No,

there's nothing normal about that." Fowler Dep. 202:3-8 (Ex. 15); Evid. Tech. Photos (Ex. 4).

Defendants must not benefit from their spoliation of evidence by claiming that there is no evidence from which a jury could infer City Defendants were actually aware that Hulett sustained injuries, when Defendants are the reason that the evidence dispositive of this issue is unavailable. As discussed in section VII and in section IV of Hulett's cross-motion against Centro, Defendants rendered unavailable the video evidence that would establish what truly occurred at the hub regarding Hulett's medical condition, including what his condition was, what the defendants observed of his condition, what conversations they had with Rural/Metro Defendants about Hulett's condition and need to go to the hospital, and precisely what Maule said to his supervisor regarding Hulett's need to go to the hospital and police transport to the hospital. Because the spoliated evidence puts the issues of fact for this cause of action in dispute, summary judgment must not be granted. The Court should thus deny City Defendants' motion for summary judgment under Point X of its memorandum.

## CONCLUSION

For the reasons stated above, the Court should grant Hulett's motion for summary judgment for the causes of action of excessive force, false arrest and false imprisonment, malicious prosecution, and *Monell* liability; impose sanctions for Defendants' spoliation of important and relevant evidence; and grant such other and further relief that it deems just and proper. The Court should deny City Defendants' motion for summary judgment.

Dated:  March 6, 2017                              Respectfully submitted,

  s/ Frederick R. Guy                                s/ Erin G. Van Vleck
**Frederick R. Guy**                          **Erin G. Van Vleck**
Bar Roll No. 601162                          Bar Roll No. 520370
Attorney for Plaintiff Brad L. Hulett        Attorney for Plaintiff Brad L. Hulett
Guy Law Firm, PLLC                           Law Office of Erin G. Van Vleck, LLC
3596 Pleasant Valley Road                    PO Box 83526
Syracuse, NY 13215                           Fairbanks, AK 99708
Telephone: (315) 314-7461                    Telephone: (907) 251-1760
Facsimile: (315) 254-2126                    Facsimile: (844) 332-3973
rickguy7@gmail.com                           erin@vanvlecklaw.com